Edson K. McClellan (State Bar No. 199541)
emcclellan@rutan.com
Kenneth J. Zielinski (State Bar No. 258555)
kzielinski@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiffs
MICHAEL MOSTIPAK and NICKLAUS WOOTEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

MICHAEL MOSTIPAK, an individual; NICKLAUS WOOTEN, an individual,

Plaintiffs,

vs.

BADGER DAYLIGHTING CORP., a Nevada Corporation; and DOES 1-20 inclusive,

Defendants.

Case No. 2:17-CV-00247-MCE-CKD

Judge: Hon. Morrison C. England, Jr.

**DECLARATION OF NICKLAUS WOOTEN IN SUPPORT OF OPPOSITION TO BADGER DAYLIGHTING CORP.'S MOTION TO DISMISS SECOND CAUSE OF ACTION FOR FORUM NONCONVENIENS**

I, Nicklaus Wooten, declare as follows:

1. I am one of the Plaintiffs in this action. I make this Declaration in support of the Opposition to Badger Daylighting Corp.'s Motion to Dismiss Second Cause of Action for Forum Non Conveniens. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

**Background, Family, and Financial Status**

2. I am a 38 year-old native of California. I currently live in Vacaville, and work in Benicia, California. I have lived and worked in California my entire life.

3. I am married to my wife of 4 years, and we have a three year-old son. My

wife does not work, so I am the sole provider for our family.

4. In 2014, I graduated from the University of Phoenix with a degree in criminal justice, after taking many years of online classes. While I worked my way through school, I had to borrow money to finance my education. After graduating, my total student loan debt was approximately $62,000. As of today, I have approximately $59,000 in student loan debt remaining, which I must pay back. My current student loan payment is about $380 per month.

5. My family and I rent and live in a 1,200 square foot house for $1,725 per month.

6. My wife and I share a single car. Our car payment is $390 per month.

7. We spend approximately $600 per month on food, and about $1,200 per month on insurance.

8. Other monthly expenses for things such as doctor visits, dental visits, gas, electricity, telephones, etc., are approximately $1,000 per month.

9. Today, I earn an annual salary of $120,000 per year. After meeting all of my financial obligations and providing the necessities for my family, we have approximately $400 left in residual cash each month.

**Relevant Work History and the Non-Compete Agreement**

10. After high school, I started out as a laborer at the age of 19. At that time, I worked for a company by the name of Mastec in Redding, California. Over the years, as my skills and knowledge improved, I progressed in the Hydrovac excavation industry.

11. In March 2010, I was hired by Badger Daylighting Corp. ("Badger"), an excavation company. From about March 2010 until June 2013, I worked for Badger in San Diego, California, as an operator driving commercial trucks.

12. During my time as a truck operator, Badger never required me to sign any type of non-compete or confidentiality agreement, nor did I ever travel to Indiana.

13. In early June 2013, a Northern California Badger Area Manager, Nick Azevedo, contacted me about relocating to Northern California. At that time, I knew Mr.

Azevedo because he trained me when I started with Badger in 2010 and we worked together over the years. Mr. Azevedo and I got along well, which is why I believe he wanted me to work with him in Northern California.

14. At first, Mr. Azevedo offered me a comparable truck operator position. However, given the expense and logistics of relocating my family from San Diego, I declined the offer.

15. After I declined the initial offer, Mr. Azevedo offered me an operations supervisor position, which I considered to be a promotion.

16. However, in order for me to accept the position, Mr. Azevedo explained to me that I would be required to relocate to Northern California within about two-weeks' time to be able to start work on July 1, 2013, and sign a confidentiality and non-competition agreement ("Non-Compete Agreement"), which Mr. Azevedo provided me a copy of.

17. After reading the Non-Compete Agreement, I had serious concerns about the agreement, which I shared with Mr. Azevedo.

18. In particular, I told Mr. Azevedo that by signing the agreement, I was worried that if I ever left Badger, it appeared that the non-compete in the hydrovac industry (the only industry I know) would effectively prevent me from providing for my family for two years.

19. I also told Mr. Azevedo that I was concerned that it appeared as if the Non-Compete Agreement required disputes to be resolved in Indiana, a state in which I had never been to before and in which I knew no one.

20. During our conversations at the time, Mr. Azevedo repeatedly assured me that the Non-Compete Agreement, including the part of the agreement which stated that disputes are required to be resolved in Indiana, was unenforceable.

21. Specifically, Mr. Azevedo told me that the agreement was "useless," "toilet paper," and "ain't worth shit."

22. Despite that I still had reservations about signing the Non-Compete Agreement. I asked Mr. Azevedo where this information came from and "how" could he assure me that what he said was true because I was truly concerned about my family's future

if I ever had to leave Badger.

23. In response, Mr. Azevedo told me not to worry and that these assurances came from Ron Sommerfeld, Badger's Regional Manager at the time. And, Mr. Azevedo encouraged me to just go ahead and sign the agreement.

24. In reliance upon Mr. Azevedo's representations, I signed the Non-Compete Agreement. I quickly moved my family to northern California within about two weeks' time in order to begin work as an Operations Supervisor. I was not represented by counsel at the time that I signed the Non-Compete Agreement.

25. After accepting the position, Badger required me to attend a three-day training at its Pittsboro, Indiana location. During that brief time, I received HR information and various trainings regarding safety, management etiquette, computer systems, etc. The three days are the only time in my life that I have ever visited Indiana.

26. Following that, I continued to work as an Operations Supervisor at Badger for about three years.

27. I lived and worked in the State of California during the entire time that I was employed by Badger. Moreover, all of the interactions that I had with Badger customers were exclusively in California.

28. I worked in operations for my entire employment with Badger and considered, myself to be a "blue collar" worker.

29. I know Nick Azevedo because we worked together for years. Over the years and on the basis of my interactions with him, it is my understanding that he lives either in or within the vicinity of Hanford, California.

30. I also know Ron Sommerfeld too, because we worked together for years at Badger. During that time and on the basis of my interactions with him, it is my understanding that he lives in the Los Angeles area. A true and correct copy of Ron Sommerfeld's Linkedin profile, which I obtained on March 9, 2017, at https://www.linkedin.com/in/ron-sommerfeld-mba-62081821/ is attached as **<u>Exhibit A</u>**. The profile likewise reflects that he lives in the Los Angeles area.

**Wooten Joins Caribou, Badger Immediately Seeks To Enforce The Illegal Non-Compete Agreement, And Files Suit In Indiana**

31. To pursue a better opportunity for my family, I resigned from Badger on November 30, 2016, and joined Caribou Energy Corporation, which is a veteran-owned, small business also in the excavation industry.

32. On December 12, 2016, less than two weeks after I left Badger, Badger's counsel sent me a cease-and-desist letter, threatening to enforce the Non-Compete Agreement. A true and correct copy of the December 12, 2016 letter is attached as **Exhibit B**.

33. In addition, based on my conversations with other former Badger employees who resigned around the same time I did, I am aware that Badger also sent similar cease-and-desist letters to them These are the employees that Badger falsely claims my Co-Plaintiff, Mike Mostipak, and I solicited to leave Badger.

34. I know the former Badger's employees because we all worked together for years. Over the years and on the basis of my routine interaction with them, it is my understanding that each of them lives within 60-70 miles of Benicia, California.

35. On December 22, 2016, before I could respond to the December 12 letter, Badger filed an action against me in Indiana Marion Superior Court, Civil Division 2, Cause No. 49DO2-1612-PL-045014 ("Indiana Action").

36. On January 3, 2017, Mr. Mostipak (who also received a cease-and-desist letter from Badger) and I filed a Complaint against Badger in Solano County Superior Court. Each of us sought a declaration from the Court that the Non-Compete Agreements we signed are illegal under Business & Professions Code section 16600.

37. To date, because of my limited financial means and Caribou's belief in the injustice of this matter, Caribou has been generously assisting me financially in pursuing this declaratory relief action and in defending the Indiana Action. However, based on my conversations with Caribou's executives, I understand that Caribou, a small company with about 15 employees, will not be able to assist me indefinitely. And, without Caribou's

assistance, I will not be able to absorb the financial burden of litigating in Indiana.

38. My counsel in the Indiana Action has filed a motion to dismiss Badger's complaint on the grounds that the action is more appropriately venued in my home State of California.

39. Fortunately, at this time, discovery has been stayed in the Indiana action. A true and correct copy of the Indiana Action February 23, 2017 Court Order is attached as **Exhibit C**.

Executed on March 9, 2017, at Benicia, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Nicklaus Wooten



Ron Sommerfeld, MBA

Regional Operations, Ice Energy Holdings, LLC

Ice Energy Holdings, LLC • University of Redlands

Greater Los Angeles Area • 500+

InMail Pending

Seasoned professional with distinguished record of achieving high levels of profitability in the utility, energy
storage, pipeline and oil-field services environments. Adept at turning underperforming ope... See more

Contact and Personal Info

Ron's Profile, Websites, Twitter, and Birth

Show more

Highlights



42 Mutual Connections

You and Ron both know Bill Gilmartin, Robert Ellenwood, and 40 others



You both worked at Badger Daylighting Inc

You both worked at Badger Daylighting Inc from Jul 2012 to Jul 2013

Ron's Activity

944 followers

+ Follow

Public power authority to deploy up to 100 'Ice Bear 20' storage units

Ron liked

Ice Energy: Energy Storage

Ron liked

See all activity

Experience

Regional Operations Manager

Ice Energy Holdings, LLC

Apr 2015 – Present • 2 yrs • Southern California

Responsabile for energy storage activities in Southern California to include acquisition and fulfillment activities on megawatt scale energy programs. Interfaced with solar and renewable energy programs. initiated and managed the Engineering, Logistics and HVAC Mechanical services departments.

See less

Director Of Operations

Nor-Cal Pipeline Services

Apr 2014 – Jul 2015 • 1 yr 4 mos • California

See description

People Also Viewed

Dave Jaeger • 2nd
Vice President at Nor Cal Pipeline Services

David Jaeger • 2nd
President at Nor Cal pipeline Serv

Sam Bice • 2nd
Business Development at Nor Cal Pipeline Services

Dave Heuer Heuer • 2nd
Director of Sales Whitney Industri Services

Anthony Phillips • 1st
District Manager at Nor Cal Pipeli Services, Inc.

Robert Noll • 2nd
Senior Sales Executive Currently seeking new opportunity

Casey Smith • 3rd
Vice President at Pipenology, LLC

Kevin Bice • 2nd
Brand Consultant, Designer, Photographer

Ernie Villanueva
--

MICHAEL CAZZULINO
--

Messaging

**Regional Manager - California**

Badger Daylighting Inc

Jul 2012 – Apr 2014 • 1 yr 10 mos • Greater Los Angeles Area

See description

**Division Manager**

Trench Plate Rental Company

Jan 2006 – Aug 2012 • 6 yrs 8 mos

See description

**General Manager**

Trench Plate Rental

May 2004 – Jan 2006 • 1 yr 9 mos

See description

See more positions

Education

**University of Redlands**

MBA, Business

2005 – 2007

**University of Redlands**

B.S., Business

Volunteering Experience & Causes

**Director KidsPoint**

TurningPoint Church LA

Jan 2007 – Dec 2012 • 6 yrs

Children

Being a part of the care and teaching of children is one of the greatest pleasures a person can have.

See less

Messaging

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
(562) 653-3200 • (714) 826-5480

FAX (562) 653-3333
WWW.AALRR.COM

FRESNO
(559) 225-6700

IRVINE
(949) 453-4260

PASADENA
(626) 583-8600

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:

014854.00009
14666535.1

December 12, 2016

***CERTIFIED - RETURN RECEIPT REQUESTED***

Nicklaus Wooten
143 Hartford Ave.
Vacaville, California 95687

**Re: NOTICE OF DEMAND TO CEASE AND DESIST UNLAWFUL BUSINESS PRACTICE**

Dear Mr. Wooten:

This firm represents Badger Daylighting Corporation ("Badger").

It has come to our attention that you are currently employed by Caribou Energy Corporation ("Caribou"). As you know, Caribou is a direct competitor of Badger. Caribou has recently engaged in an active and aggressive campaign of raiding Badger's employees for employment at Caribou. To date, Caribou has induced at least 11 key employees (including you) to leave their employment with Badger.

By way of review, Badger employed you as its Operations Supervisor. As a condition of your employment with Badger, you signed a Confidentiality and Non-Competition Agreement pursuant to which you expressly agreed not to solicit, encourage or induce any employee of Badger to terminate their relationship with Badger.

On November 30, 2016 you resigned your position at Badger. Within the next day or two, 10 other employees left Badger. Given the circumstances, it is clear that this was an orchestrated maneuver in which you played a key role.

Your role in assisting Caribou in its efforts to solicit Badger's employees may be constructed as intentionally interfering with the contractual relationship between Badger and its employees and could constitute a violation of the law, subjecting you to liability for any damages caused to Badger as a result of the improper solicitation.

You were also made privy to certain confidential, proprietary and trade secret information, including but not limited to, Badger's customer lists and pricing information. This information is not available to the general public, is considered a valuable commercial asset of Badger, and is

considered proprietary, confidential and trade secret information of Badger. Badger has expended, and continues to expend, substantial amounts of time and money in developing its trade secret information and keeping it confidential. Badger's confidential, proprietary and trade secret information was provided to you in confidence so that you could perform your job at Badger. You were aware that this information was to be kept confidential and was not to be misappropriated from the company upon your leaving your employment with Badger.

It is unlawful for you to utilize Badger's confidential and trade secret information under the provisions of the Uniform Trade Secrets Act. Your conduct constitutes not only a trade secret violation, but may also constitute breach of contract, conversion, interference with contract, interference with prospective economic advantage and violation of your agreement with Badger.

By virtue of your position within Badger as its Operations Supervisor, you were a fiduciary who owed to Badger an undivided duty of loyalty, honesty and good faith, and a duty not to engage in conduct detrimental to the interests of Badger. Further, Badger placed trust and confidence in you.

It is a breach of your duty of loyalty and as a fiduciary to misappropriate and utilize Badger's confidential information for the benefit of yourself personally and the benefit of competitors and others, including Caribou.

As a result of your potentially improper acts, Badger hereby formally demands that you and Caribou, and any other person or entity acting on your behalf, immediately **cease and desist** in soliciting Badger's employees and misappropriating and utilizing all proprietary, confidential and trade secret information of Badger and immediately return all misappropriated proprietary, confidential and trade secret information of Badger. **Written confirmation that you have complied with this request must be received within 7 days of the date of this letter.**

Additionally, Badger demands that any and all misappropriated proprietary, confidential and trade secret information that is stored or contained on any computer or computer system, whether it be your own personal computer or that of Caribou, or any other person or entity, be deleted and a **written verification of such action be provided to this office within 7 days of the date of this letter.**

Should you not immediately cease and desist as requested above and return all Badger property and information to Badger, Badger will protect its business interests through legal action and may seek any and all remedies available, including but not limited to, a temporary restraining order and preliminary injunction preventing the use or disclosure of Badger's trade secret information, restitution in the form of all profits illegally obtained by you and Caribou as a result of the misappropriation of Badger's property and information, Badger's lost profits for any and all accounts lost as a result of the misappropriation of Badger's property and information, the imputation of punitive damages and the recovery of attorneys' fees. Accordingly, please take

action necessary to ensure that you comply with these demands and cease your efforts to raid Badger's employees.

Nothing contained herein or omitted here from is intended, nor shall be construed, as an admission, limitation, or waiver of any of our rights, remedies or defenses, either by law or in equity, all of which rights and remedies are hereby expressly reserved.

These matters are extremely serious and require your immediate attention.

Very truly yours,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Scott K. Dauscher

SKD:smc

STATE OF INDIANA )
)SS:
COUNTY OF MARION )

MARION SUPERIOR COURT 2

CAUSE NO. 49D02-1612-PL-045014

BADGER DAYLIGHTING CORP.,

Plaintiff,

v.

NICKLAUS WOOTEN,

Defendant.

FILED
February 23, 2017
Myla A. Eldridge
CLERK OF THE COURT
MARION COUNTY

**ORDER GRANTING MOTION TO STAY DISCOVERY**

Defendant, Nicklaus Wooten, by counsel filed his Motion to Stay Discovery. The Court considered and now GRANTS Defendant's Motion and ORDERS that all discovery is stayed until after the Court's ruling on the pending Motion to Dismiss.

Dated: February 23, 2017

Magistrate
JUDGE, MARION SUPERIOR COURT 2
CD

Distribution:

Craig R. Patterson
cpatterson@beckmanlawson.com
BECKMAN LAWSON, LLP
201 W. Wayne Street
Fort Wayne, IN 46802

Dana E. Stutzman
dstutzman@hallrender.com
Hall, Render, Killian, Heath & Lyman, P.C.
500 N. Meridian St., Suite 400
Indianapolis, IN 46204

2341473v.1