UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL MOSTIPAK, an individual;
NICKLAUS WOOTEN an individual,

Plaintiffs,

v.

BADGER DAYLIGHTING CORP., a
Nevada Corporation; and DOES 1-20
inclusive,

Defendants.

No. 2:17-cv-00247-MCE-CKD

**MEMORANDUM AND ORDER**

Through the present motion, Defendant Badger Daylighting Corp. ("Defendant" or "Badger") asks the Court to dismiss Plaintiff Nicklaus Wooten's ("Plaintiff" or "Wooten") Second Cause of Action for declaratory relief on forum non conveniens grounds.[1] Because Plaintiff Wooten signed an agreement with Badger which contained a forum selection clause, Badger asserts that any disputes arising under that agreement, which includes the subject lawsuit, must be resolved in Marion County, Indiana. In the alternative, Defendant urges the Court to stay the action pending resolution of the Marion County, Indiana lawsuit filed by Badger against Plaintiff in December, 2016. As set forth below, Defendant's Motion is GRANTED.[2]

**BACKGROUND**

---

[1] Michael Mostipak is also a named Plaintiff in this lawsuit together with Nicklaus Wooten, with the Complaint alleging two separate causes of action on each Plaintiff's behalf for declaratory relief against Badger. This Motion is limited to the Second Cause of Action as alleged by Plaintiff Wooten.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefs in accordance with E.D. Local Rule 230(g).

1

Badger is in the business of providing hydrovac excavations services throughout the United States and Canada. Decl. of Dona Manship ("Manship Decl."), ¶ 3. It is incorporated in Nevada, but its corporate headquarters and principal place of business are located in Brownsburg, Indiana. Id. Between March 2010 and June 2013, Plaintiff worked for Badger in San Diego, California, as an operator driving commercial trucks. Wooten Decl., ¶ 11. He was not required to sign any type of non-compete or confidentiality agreement while working in that capacity. In July of 2013, however, Plaintiff was contacted by Badger's Northern California Area Manager, Nick Azevedo, about relocating to Northern California. Id. at ¶ 13. He was subsequently hired as an Operations Supervisor and as a condition of that employment, entered into a Confidentiality and Non-Competition Agreement ("Agreement").

Under the terms of that Agreement, Plaintiff agreed to a forum selection clause vesting exclusive jurisdiction in Marion County, Indiana. Paragraph 7 of the Agreement specifically provides that the "[A]greement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana." Manship Decl., ¶ 8, Ex. A, ¶ 1(b). The Agreement also contained restrictive covenants 1) prohibiting Plaintiff from competing with Badger in the State of California for a period of two years from his separation of employment with Badger; 2) containing a non-solicitation restriction provision which prohibits Plaintiff from soliciting any "[e[mployee, consultant, or contractor or sub-contractor" of Badger for the same two-year period; and 3) containing a confidentiality provision precluding Plaintiff from disclosing or using confidential information of Badger, which is defined as including both trade secrets and any confidential or competitively sensitive information of Badger. Id. at Ex. A, ¶ 1(b)-(c), ¶ 2. The Agreement further contained an acknowledgment by Plaintiff agreeing that its limitations were reasonable and would not prohibit him from earning a livelihood, and that the protections and restrictions contained in the Agreement could be

enforced by injunctive relief.  Id. at ¶ 3.

Plaintiff worked as an Operations Supervisor for Badger until November of 2016, when he resigned to join Caribou Energy Corporation, another hydrovac excavation company that Badger claims is a direct competitor.  Plaintiff Mostipak also left Badger at the same time to work at Caribou, along with nine other former Badger employees.

On December 22, 2016, Badger filed a lawsuit against Plaintiff in Marion County Superior Court, Indiana, Badger Daylighting Corp. v. Nicklaus Wooten, Case No. 49D02-1612-PL 145014 ("Indiana Complaint'), for breach of the Agreement.  The Indiana Complaint alleges that following his resignation from Badger, Plaintiff breached the Agreement by working in a competitive capacity with a competitor, namely Caribou, and also by soliciting multiple Badger employees to leave Badger to work for Caribou.  Thereafter, on January 3, 2017, Plaintiff filed his own complaint against Badger in Solano County Superior Court ("California Complaint"), and that lawsuit was removed to this Court on February 13, 2017.

As indicated above, in now moving to dismiss the California Complaint pending before the undersigned, Defendant alleges that the Agreement prohibits any matter related to Plaintiff's employment from being litigated outside Marion County, Indiana.

**STANDARD**

Pursuant to 28 U.S.C. § 1391(b), venue is proper 1) in a judicial district in which any defendant resides; 2) in a judicial district in which a substantial part of the events giving rise to the claim occurred; or 3) if no judicial district is otherwise appropriate, in any judicial district in which any defendant is subject to the court's personal jurisdiction.  Even where venue is proper under § 1391(b), however, a defendant may still move to dismiss the case if a forum selection clause points towards another court.  Atlantic Marine Constr. Co., v. U.S. Dist. Court for Western Dist. of Texas, 134 S. Ct. 568, 579 (2013).  In that circumstance, the proper motion is one for forum non conveniens.  Id. at

580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state . . . forum is through the doctrine of forum non conveniens.").

In evaluating a motion for forum non conveniens, a court must first determine whether the relevant forum selection clause is valid under federal law. Doe 1 v. AOL, LLC, 552 F.3d 1077, 1083 (9th Cir. 2009); TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1353 (9th Cir. 1990). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Carnival Cruise Lines v. Shute, Inc., 499 U.S. 585, 593-95 (1991); M/S Bremen v. Zapta Offshore Co., 407 U.S. 1, 10 (1971). The party challenging a forum selection clause therefore bears a "heavy burden of proof" in this regard and must "clearly show that enforcement would be unreasonable. Id. at 17.

A forum selection clause may be found unreasonable on three grounds as delineated by the Supreme Court's Bremen decision: 1) if inclusion of the clause in the agreement at issue was the product of fraud or overreaching; 2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and 3) if enforcement would contravene a strong public policy of the forum in which the suit is brought. Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998), citing Bremen, 407 U.S. 12-13.

If a forum selection clause passes muster under federal law, the court's next inquiry in the forum non conveniens analysis is to determine whether considerations of public interest weigh against dismissal.[3] Those factors include "'the administrative difficulties flowing from court congestion'; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Atlantic Marine, 134 S. Ct at 581 n.6. Public interest factors nonetheless "rarely" function to defeat a motion, with the practical effect

---

[3] Provided that a valid forum selection clause exists, private factors "weigh entirely in favor of the preselected forum." Atlantic Marine, 134 S. Ct. at 582.

being that forum selection clauses should control except in unusual circumstances. Id. at 582.

**ANALYSIS**

Defendant argues that Plaintiff cannot meet his heavy burden in demonstrating that the forum selection clause was unreasonable under the facts of this case. First, and perhaps most significantly, Plaintiff's only claim before this Court is that the Agreement is unenforceable as an unlawful restraint of trade in violation of California Business and Professions Code § 16600. He does not allege fraud. Moreover, any argument that the employer/employee relationship gave Badger unequal bargaining power and was overreaching on that basis has already been rejected. See, e.g., Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1141 (9th Cir. 2004) (holding that evidence plaintiff was unsophisticated and/or was advised his employment contract was "not negotiable" was insufficient to overcome "strong presumption in favor of enforcing forum selection clauses"). Finally, Plaintiff cannot claim overreaching by alleging he did not read the terms and conditions of the Agreement since he is deemed to have been aware of its terms and conditions, including the forum selection clause. Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1505 (9th Cir. 1986) ("A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it.").

Indeed, while Plaintiff does adduce evidence in support of this Motion to argue that the Agreement was procured fraudulently, that evidence suggests that he did in fact read the Agreement. According to Plaintiff, prior to signing the Agreement, he expressed concerns about the two-year non-compete and Indiana forum-selection provisions with Badger's Area Manager, Nick Azevedo. He claims Azevedo assured him that he had nothing to worry about it because the Agreement was "useless," "toilet paper," and "ain't worth shit." Wooten Decl, ¶ 21. When he pressed Azevedo as to the basis for that

assessment, Plaintiff claims Azevedo said he was told as much by Ron Sommerfeld, Badger's then Regional Manager who signed the Agreement on behalf of Badger. Id. at ¶¶ 22-23.

Coming from Badger's management, and especially to the extent they purport to emanate from the very individual who executed the Agreement for Badger, these claims would appear questionable. Significantly, their reliability is flatly contradicted by Nick Azevedo himself, who has also since left Badger's employ. According to Mr. Azevedo, Wooten's statements were both innacurate and inconsistent with how he conducted himself as an Area Manager for Badger. He did not recall making assurances to Wooten either about the Agreement or anything Ron Sommerfeld said. Decl. of Nicholas Azevedo, ¶¶ 6-7.

In considering a motion to dismiss like this one, courts are not required to accept as true Plaintiff's allegations sounding in fraud where those allegations are contradicted by another source, here Mr. Azevedo. See, e.g., Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998). That conclusion is underscored by the presumption in favor of enforcing forum-selection provisions, and particularly the fact that, as indicated above, Plaintiff is deemed to have been aware of its terms and conditions, which included an express concession that its limitations were reasonable. Consequently, the Court cannot conclude that Plaintiff has met his "heavy burden" in showing that the Agreement was "unreasonably" procured through fraudulent misrepresentations by Mr. Azevedo. Plaintiff has thus failed to make this initial showing of unreasonableness under the Bremen analysis.

Plaintiff's next option is to show that litigating in the Indiana forum specified in the Agreement would, in essence, deprive Plaintiff of his day in court. Plaintiff is no more successful in satisfying this prerequisite than he was above because he has not demonstrated that the Indiana courts cannot effectively resolve the dispute and safeguard the parties' rights. Instead, Plaintiff remains free to argue to the Indiana court, for example, that the choice of Indiana law called for in the Agreement should be

disregarded and that California law should apply instead, and it appears that Indiana courts have made just such assessments.  See Austin Powder Co. v. Wallwork, 761 F. Supp. 612, 615-617 (S.D. Ind. 1990) (examining covenants not to compete under the laws of two states to decide whether the public policy of the first state outweighed the public policy of the second state in choice of law determination).  Moreover, although Plaintiff claims that his financial constraints preclude him from covering the costs attendant to litigating the case in Indiana, it appears that Plaintiff's new employer, Caribou, is paying for Plaintiff's defense both in this matter and in the concurrent Indiana action.  Consequently, Plaintiff has not shown that he will be precluded from having his day in court should he be required to litigate his dispute with Badger in Indiana.

      Lastly, under Bremen, the Court can determine that a forum selection clause is unreasonable if enforcing the clause would contravene California's "strong public policy." Bremen, 407 U.S. at 12-13.  As a starting point, federal courts have uniformly rejected that argument, even in the very context of the California Business and Professions code section that Plaintiff has alleged.  See, e.g., Britvan v. Cantor Fitzgerald, L.P., No. 2:16-cv-04075-ODW (JPRx), 2016 WL 3896821 at *3 (C.D. Cal. July 18, 2016) (rejecting plaintiff's arguments that enforcement of a forum selection clause would violate California Business & Professions Code § 16600[4] because "the transferee forum, unlike California, allows covenants not to compete," and determining that "California district courts have found this argument to be unpersuasive").  Moreover, to the extent Plaintiff cites California Labor Code § 925, that statute prohibits employers from requiring, as a condition of employment, that employees agree to provisions either requiring them to adjudicate outside of California a claim arising in California or depriving employees the substantive protection of California law with respect to a controversy arising in California. Significantly, § 925 does not prohibit employees like Wooten from executing an agreement to that effect, particularly where, as here, Wooten specifically agreed that its

---

[4] This section affords employees the right to pursue the lawful employment and enterprise of their choice, without being subject to illegal contractual restraints.

provisions were reasonable and would not prohibit him from earning a livelihood. Agreement, Ex. A. to Manship Decl., ¶ 3.

Since Plaintiff has not demonstrated that California's public policy makes enforcement of the Agreement unreasonable, that eliminates the last available alternative for establishing unreasonableness under Bremen. Consequently, the Court finds that the Agreement does not contravene federal law. The only remaining determination, under Atlantic Marine, is whether considerations of public interest still mandate dismissal on forum non conveniens grounds. Those factors, as indicated above, include court congestion and strongly localized interests. Atlantic Marine, 134 S. Ct. at 581 n.6. The considerations identified, however, do not appear compelling, and the Supreme Court has recognized that they are rarely sufficient to undermine a forum selection clause in any event. Id. at 582.

Here, the scope of Badger's Indiana lawsuit exceeds the declaratory relief sought in the present action. Moreover, to the extent the dispute between the parties centers around Indiana choice of law and forum selection clauses, resolution of those questions is a matter better relegated to Indiana courts, particularly since Badger's corporate headquarters and principal place of business is located in Indiana. Additionally, while this Court is more impacted in terms of caseload than the Southern District of Indiana, even Plaintiff concedes that any difference in that regard is not dispositive. See Opp'n, 15:27-16:3. Finally, it should be noted that under principles of federal comity, the Indiana action was filed first, which permits this Court "to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). This is particularly appropriate where, as here, the "first-filed" Indiana action is filed on substantive grounds (for actual breaches of the Agreement) whereas the present second-filed lawsuit seeks only declaratory relief to "remove ongoing litigation from the forum chosen by [Badger]." Id. at 97. Given all of the foregoing, the Court does not believe that the unusual circumstances needed to defeat a forum-

selection clause on public interest grounds are present in this matter.  See <u>Atlantic Marine</u>, 134 S. Ct. at 582.

**CONCLUSION**

For all the reasons set forth above, Defendant Badger's Motion to Dismiss Plaintiff Wooten's Second Cause of Action for Forum Non Conveniens (ECF No. 5) is GRANTED.[5]  In addition, Defendant Badger's unopposed Motion (ECF No. 7) for an extension of time to respond to Plaintiffs' First Cause of Action until adjudication of the Second Cause of Action is also GRANTED.  Defendant Badger's response to the First Cause of Action is due not later than fourteen (14) days after the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated:  September 28, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] While Defendant's Motion also ostensibly requests costs and attorney's fees incurred in this lawsuit, that issue has not been fully briefed inasmuch as the nature and amount of such expenses has not been identified.  The Court therefore finds the issue is not properly before it at this time.

The Court further notes both parties have asked the Court to judicially notice certain evidence pursuant to Federal Rule of Evidence 201, and neither request has been opposed.  To the extent the evidence so identified has been relied upon in this Memorandum and Order, those requests are GRANTED.